[No. C060511. Third Dist. Nov. 17, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
VAN L. PHU, Defendant and Appellant.

COUNSEL

J. Edward Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**NICHOLSON, J.**—After pleading no contest to conspiracy to sell marijuana (Pen. Code, § 182, subd. (a)(1); Health & Saf. Code, § 11360), defendant Van L. Phu was sentenced to two years in state prison. Following a restitution hearing, defendant was ordered to pay $24,752.35 to the Sacramento Municipal Utility District (SMUD).

Defendant appeals, claiming the trial court abused its discretion in setting the amount of restitution. We conclude there was a rational basis for the trial court's order, although we will adjust the amount of restitution to $24,704.91 to conform to the evidence presented at the restitution hearing.

## PROCEDURAL AND FACTUAL BACKGROUND

In May 2007, an illegal diversion of electrical power was discovered at a house for which defendant was the utilities subscriber. The discovery arose out of a police operation involving 21 residences being investigated for marijuana cultivation. A surveillance of the house was initiated, which entailed driving by "numerous times to check to see if there was any change in the status of the house." No removal of processed marijuana was observed during the surveillance.

A search of the house four months later uncovered a marijuana growing operation, including grow lights, ballasts, fans, and 504 marijuana plants in pots at different stages of maturity. The record does not indicate that any dried marijuana was found at the scene. Defendant's fingerprints were found on light bulb sockets in bedrooms that were set up for growing marijuana. During the search, modifications in the wiring were discovered, indicating that the meter had been bypassed in order to steal power.

Initially, SMUD reported a loss of $5,258.39 for the power that had been stolen during the illegal operation. However, at the restitution hearing, the prosecuting attorney reported that SMUD was requesting $24,752.35.

At the hearing, the police detective in charge of the operation testified that the setup at the house was that of an ongoing, long-term marijuana cultivation business, requiring a large monetary investment in equipment. According to the detective, marijuana plants typically take three to four months to mature to a stage at which they can be harvested for commercial use.

An investigator with SMUD testified that the power in the house was being diverted through a subpanel inside, which was connected to a timer system.

He explained that SMUD had calculated the amount of power that was stolen based on the timer settings and the wattage of the equipment in the house that was connected to the subpanel. The time period for which reimbursement was being sought was calculated based on the date that utility service was started by defendant, which was the previous December. The investigator offered the following explanation for using this date: "[W]e've got to use the best information that we have at hand. And [defendant] . . . did not call us to tell us when he was going to start stealing power from us as a utility. So, you know, the assumption is that we're going to bill from the service start date because, as far as we're concerned, he entered into a contract with us, and he had a chance to have that service metered accurately, and he chose not to. He chose by bypassing the service that we are able to render a bill to, you know, to the best information that we have in front of us for the time period he's been on contract with us." The investigator acknowledged there was "no way to tell" the exact date the theft of power began. Based on this approach, SMUD calculated its loss at $24,704.91. However, the trial court set restitution in the amount of $24,752.35.

## DISCUSSION

Defendant contends the trial court's restitution order was an abuse of discretion because the calculations on which it was based were speculative. We disagree.

■ "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (Pen. Code, § 1202.4, subd. (f).) Restitution must " 'be set in an amount which will fully reimburse the victim for his or her losses unless there are clear and compelling reasons not to do so. . . .' " (*People v. Mearns* (2002) 97 Cal.App.4th 493, 499 [118 Cal.Rptr.2d 511]; see Pen. Code, § 1202.4, subd. (f)(3).) " 'While it is not required to make an order in keeping with the exact amount of loss, the trial court must use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.' " (*People v. Mearns, supra,* at p. 498.)

"A victim's restitution right is to be broadly and liberally construed." (*People v. Mearns, supra,* 97 Cal.App.4th at p. 500.) " ' "[S]entencing judges are given virtually unlimited discretion as to the kind of information they can consider" ' " in determining victim restitution. (*People v. Foster* (1993) 14 Cal.App.4th 939, 946–947 [18 Cal.Rptr.2d 1], quoting *People v. Baumann*

(1985) 176 Cal.App.3d 67, 81 [222 Cal.Rptr. 32].) Restitution orders are reviewed for abuse of discretion. (*People v. Mearns, supra*, 97 Cal.App.4th at p. 498.) When there is a factual and rational basis for the amount of restitution ordered, no abuse of discretion will be found. (*Id.* at p. 499.)

▮ In the present matter, it could not be ascertained with certainty when power began being illegally diverted. The only specific dates available for calculating this were the date defendant subscribed to utilities and the date five months later when SMUD first determined that power was being illegally diverted into the house. Defendant argues that the evidence showed he did not begin using the residence for marijuana cultivation until May 2007, as there was no evidence any marijuana had been harvested at the house and there was testimony that it takes four months for a marijuana plant to reach maturity. However, under the circumstances presented, we conclude it was reasonable to use the earlier date.

In *People v. Baker* (2005) 126 Cal.App.4th 463 [23 Cal.Rptr.3d 871], the appellate court affirmed an award of restitution in a cattle stealing case that included restitution for calves the victims anticipated would be born to the stolen cows during the period they were out of the victims' possession. Just as the victims were entitled to recover this loss despite their lack of personal knowledge as to whether any calves were actually born to the stolen cows, here, SMUD's "lack of personal knowledge [regarding the period of time and amount of the theft of power] was not due to any fault by [SMUD]; rather, it was defendant's misappropriation . . . that led to [SMUD's] inability to conclusively determine" the precise extent of the theft. (*Id.* at p. 469.)

Relying on the later date to calculate SMUD's losses almost certainly would have resulted in a restitution award that would fall short of fully compensating the victim for the losses suffered. Selecting the earlier date was the best guarantee that the victim would receive full compensation. We agree with the People that, "[s]ince there was no evidence of a definitive 'start' date for [defendant's] theft, any date other than the onset of SMUD service was necessarily speculative." In the words of the SMUD investigator, this was the "best information" available as to when the theft of power began.

There was other evidence corroborating this conclusion. The house was set up as an ongoing, long-term marijuana cultivation business, involving a substantial capital investment. The operation's setup, including the illegal diversion of power, suggests it was sophisticated and planned. There was evidence that all four bedrooms in the home were being used to grow marijuana. Thus, it was reasonable to infer that, rather than an idea that occurred to defendant during his theretofore lawful occupancy of the home,

the marijuana growing operation had been planned at the time defendant became the utilities subscriber. Moreover, the evidence suggests that the house was not under round-the-clock surveillance, so the fact that dried marijuana may not have been found at the time of the search or that there were no reports of marijuana being removed from the residence is not dispositive of when cultivation began at the house.

Defendant also argues that the amount of restitution was inflated because the amount of power diverted earlier would have been less than on the date of the search. He relies on an article on how to grow medical marijuana he obtained from a Web site and submitted to the trial court with his points and authorities concerning restitution. However, neither the article nor any other evidence on this subject was admitted.

Defendant also complains that the lower figure as to the amount of power being diverted in May 2007 was disregarded by SMUD when calculating the amount of restitution and that SMUD did not take intermittent readings during the four months that the house was under surveillance. But the SMUD investigator testified that the type of reading taken in May is not a very accurate way to assess billing because it only shows the amperage going through the lines at a particular point, whereas amperage fluctuates constantly. He explained that inventorying the equipment hooked up to power is the most accurate method for assessing power usage. Additionally, as explained by the SMUD investigator, the police operation was underway during this period and SMUD could not "do anything without interrupting [the] on[]going investigation." As regular meter monitoring by SMUD could have threatened the secrecy of the police operation, this explanation was reasonable.

▮ Finally, defendant complains that the trial court failed to give a basis for the amount of restitution ordered, citing *People v. Giordano* (2007) 42 Cal.4th 644, 664 [68 Cal.Rptr.3d 51, 170 P.3d 623], in which the California Supreme Court noted: "To facilitate appellate review of the trial court's restitution order, the trial court must take care to make a record of the restitution hearing, analyze the evidence presented, and make a clear statement of the calculation method used and how that method justifies the amount ordered." Although the trial court, here, did not expressly state it was relying on SMUD's calculations when setting restitution, it is clear that the court's order was based on such calculations.

## DISPOSITION

The restitution order is modified to reduce the amount payable to SMUD to $24,704.91. As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment accordingly and to forward a certified copy to the Department of Corrections and Rehabilitation.

Scotland, P. J., and Robie, J., concurred.