Filed 1/30/14  P. v. Hurth CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MAURICE PIERRE HURTH,<br><br>        Defendant and Appellant. | A135072<br><br>(Solano County<br>Super. Ct. No. FCR288339) |
| THE PEOPLE,<br>        Plaintiff and Respondent,<br>v.<br><br>MAURICE PIERRE HURTH,<br><br>        Defendant and Appellant. | A137357<br><br>(Solano County<br>Super. Ct. Nos. FCR288339) |

**INTRODUCTION**

These consolidated appeals arise from defendant Maurice P. Hurth's conviction of felony vandalism (Pen. Code, § 594, subd. (a)).[1]  In appeal No. A135072, he contends the trial court abused its discretion in denying a mistrial after the victim, Hanif Adisa, in violation of an in limine ruling, briefly alluded in his testimony to defendant's alleged commission of an unrelated "home invasion."  In appeal No. A137357, Hurth contends the trial court abused its discretion in the amount of restitution ordered following revocation of his probation and sentencing.  We conclude there was no abuse of discretion and affirm defendant's conviction and the restitution order.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

BACKGROUND

In November 2010, Hanif Adisa and Tamica Darnes dated for three weeks. They remained in contact. Within several months, defendant had developed a relationship with Darnes and in February 2011, he began harassing Adisa, warning him to "leave my bitch alone."

On April 22, 2011, Darnes called Adisa and asked him to drive to her house. Adisa assumed Darnes wanted him to take her someplace, as she had asked for rides before. When Adisa arrived, he pulled into the driveway and called Darnes on her cell phone to let her know he was outside. Instead of Darnes, defendant walked out and approached the car. Adisa rolled down his window, and defendant asked Adisa who he was there to see, to which Adisa did not reply. Darnes then opened the front door of the house, and defendant walked up to speak with her. Adisa could not hear their conversation, and Darnes shortly told Adisa to leave. When Adisa saw defendant pick up a large rock, approximately six to eight inches in diameter, he began backing his car out of the driveway. Defendant threw the rock, which struck the rear window of Adisa's car, shattering it and denting the window frame. Adisa parked the car, stepped out of it, and shut the door. When he shut the door, the rear window broke completely.

In November, Adisa testified at a preliminary hearing against defendant and referred to a "home invasion" robbery defendant had committed. Thereafter, defendant and Darnes called Adisa. Defendant said, "hey, nigga, I got some news for you." Darnes, in turn, threatened, "if [he] continued to prosecute [defendant] then [Adisa's] place would be shot up." Adisa told Darnes he was going to get a restraining order against her, and that he already had one against defendant. Adisa then told the police about the phone call.

The Solano County District Attorney then filed an information charging defendant with one count of vandalism over $400 and one count of dissuading a witness from prosecuting a crime.

Before trial, defendant made an in limine motion "to prohibit the prosecutor and his witnesses from offering testimony that Mr. Hurth has been to prison or is or has been

on parole or mentioning other alleged criminal conduct." The motion claimed Adisa's statement at the preliminary hearing that defendant had "committed [a] home invasion robbery in March 2011[was] . . . highly prejudicial to Mr. Hurth." The motion asked the court to order "the prosecutor to explicitly admonish Mr. Adisa not to testify about these subject matters." The court granted the motion, ordering the prosecutor to "caution [his] witnesses not to offer up that Mr. Hurth has been to prison or on parole or anything like that." A week later, the judge who was going to preside over the trial revisited the in limine ruling and ruled "commenting on prison or parole . . . far outweighs the probative value of the testimony; and, therefore, I am going to direct . . . the district attorney to instruct Mr. Adisa . . . to refrain from bringing it up there."

At trial, the prosecutor asked Adisa if he had told police he was "afraid of Mr. Hurth" or if he was "concerned that Mr. Hurth would follow through about the threat given to [him]" Adisa replied, "Well, I said—I think I said that I was concerned because of his threats before, and he had in, um, March called . . . ." Defense counsel objected "this goes into one of the Court's pretrial rulings." The objection was overruled. The prosecutor then continued by asking, "[y]ou said you were concerned because of what reason?" Adisa responded "Yes, in March, um, allegedly a home invasion was, uh, committed by Hurth." Defense counsel immediately objected and moved to strike the answer, stating "[l]ack of personal knowledge, 352, and relevance." The court sustained the objection. Adisa continued to testify that defendant had made "many threats," to which defense counsel also objected. The court overruled this objection, and Adisa continued to testify he was concerned because of the "many threats that [he] had received since February and the type of threats. . . ."

Following the prosecution's case, defendant moved for a mistrial. After hearing argument, the trial court observed "[o]bviously it shouldn't have been said. That's why the objection was sustained and the testimony stricken." The court concluded, "I certainly don't think it reaches the level of a mistrial" and denied the motion.

Trial continued, and the jury found defendant guilty of count one, vandalism (§ 594, subd. (a)), but not guilty of count two, dissuading a witness from prosecuting a

3

crime (§ 136.1, subd. (b)(2)). On March 13, 2012, the trial court suspended imposition of sentence and placed defendant on three years formal probation, subject to numerous terms and conditions, including serving 270 days in county jail.

Six months later, on September 11, 2012, the district attorney filed a new information which also served as a notice of probation violation. Two weeks later an amended information was filed, charging defendant with possession of contraband/illegal substances (methamphetamine) in a jail facility (§ 4573.6) and alleging a prior strike (§ 1170.12, subds. (a)–(d)) and two prior prison terms (§ 667.5, subd. (b)).

On October 29, as part of a global disposition, defendant admitted violating his probation in the vandalism case by "failing to obey all laws." The trial court then terminated probation and sentenced defendant in both the new methamphetamine case and the vandalism case. As to the latter, defendant was sentenced to two years in state prison, to run concurrently with his sentence in the drug case. The court struck the strike and stayed execution on the two prison priors.

Two weeks later, on November 14, the trial court held a restitution hearing. Defendant waived his appearance. The victim, Adisa, testified, recounting what had occurred, that he had paid $693.40 to have the back window replaced, and that he had obtained two estimates to repair the damage to the car (specifically, the back window frame). The first, for $1,896.94, was for repair that entailed removing and reseating the rear window to insure no leakage. The second, for $992.93, was for an attempted repair without removal of the window. The body shop providing this estimate made clear it could not guarantee the window would not leak, and if it did, there would be a need for additional work.

The prosecution argued Adisa was entitled to a total of $2,590.34 in restitution to have all the repairs done "correctly." Defense counsel argued Adisa would receive a "windfall" if the amount was above the lower repair estimate of $992.93. He asserted that if the more problematic repair effort failed, Adisa could seek additional restitution for further repair work. The trial court awarded $2,590.34—$693.40 for the cost of repairing the rear window and $1,896.94 "to do a proper repair on the body of the car."

4

*The Mistrial Motion*

A motion for mistrial "is directed to the sound discretion of the trial court. We have explained that " '[a] mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions.' " (*People v. Jenkins* (2000) 22 Cal.4th 900, 985–986; see also *People v. Lightsey* (2012) 54 Cal.4th 668, 718.) "We review a trial court's ruling on a motion for mistrial for abuse of discretion. [Citation.] Such a motion should only be granted when a defendant's 'chances of receiving a fair trial have been irreparably damaged.' [Citation.]" (*People v. Valdez* (2004) 32 Cal.4th 73, 128.)

Even assuming Adisa's mention of the "home invasion" violated the trial court's in limine ruling, there was no resulting prejudice to defendant. Adisa's statement, one line amidst nearly two-hundred pages of testimony, was fleeting. (See, e.g., *People v. Bolden* (2002) 29 Cal.4th 515, 554–555 [upholding denial of mistrial motion, finding it "doubtful that any reasonable juror would infer from the [witness's] fleeting reference to a parole office that defendant had served a prison term for a prior felony conviction"].) Further, defendant immediately objected, the trial court sustained it, and, at the close of evidence, the court further instructed the jury: "If I sustained an objection, you must ignore the question . . . . If I ordered the testimony stricken from the record, you must disregard it and must not consider that testimony for any purpose." When a trial court sustains defense objections and admonishes the jury to disregard particular comments, we must assume the jury followed the court's admonition and prejudice was avoided.[2] (See *People v. Bennett* (2009) 45 Cal.4th 577, 612 ["We assume the jury followed the

---

[2] That the court did not, upon sustaining the objection, immediately admonish the jurors to disregard the statement, does not vitiate the assumption the jurors followed the instructions given at the close of evidence and thus did not consider the testimony as to which the objection was sustained.

admonition and that prejudice was therefore avoided."]; see also *People v. Yoder* (1979) 100 Cal.App.3d 333, 338 ["We must also assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given."].)

Accordingly, defendant has not shown his chances of receiving a fair trial were irreparably damaged, and we conclude the trial did not abuse its discretion in denying his motion for mistrial. For the same reasons, "we reject defendant's contentions that the trial court . . . impaired his right to due process of law or to an impartial jury." (*People v. Jenkins*, *supra*, 22 Cal.4th at p. 986.)

### *The Restitution Order*

Section 1202.4 governs restitution in criminal cases. (§ 1202.4) The term "loss" as used in the statute is to be "broadly and liberally" construed. (*People v. Phu* (2009) 179 Cal.App.4th 280, 283 (*Phu*).) A trial court "may compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior, even if not specifically enumerated in the statute." (*People v. Moore* (2009) 177 Cal.App.4th 1229, 1232.) Accordingly, the trial court has broad discretion in choosing a method for calculating restitution, as long as the method is rationally designed to determine the victim's economic loss. (See *People v. Maheshwari* (2003) 107 Cal.App.4th 1406, 1409–1410.) "There is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.) The victim's assessment of economic loss is prima facie evidence of loss for the purposes of restitution. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543.) Once the victim makes a prima facie showing, the burden shifts to the defendant to establish that the amount of loss is less than that claimed by the victim. (*People v. Taylor* (2011) 197 Cal.App.4th 757, 761.)

On appeal we presume a restitution award is correct. (*People v. Giordano* (2007) 42 Cal.4th 644, 666.) The amount of restitution ordered will not be reversed on appeal absent an abuse of discretion. Thus, while the trial court may not make an order that is

6

arbitrary or capricious, the order must be affirmed if there is any factual and rational basis for the amount awarded. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1320; *Phu, supra,* 179 Cal.App.4th at p. 284.)

Defendant's quarrel with the restitution order is with the award of the higher estimated amount for the repair of the window frame. He contends Adisa should have been required to try the less costly repair first, and if unsuccessful, to return to the court for additional restitution. Defendant cites no case holding that a victim must be put to the inconvenience of first trying a problematic repair, rather than just having his or her property repaired correctly the first time, and that a trial court abuses its discretion by awarding an amount that *insures* the victim is made whole and placed in the same position he was in before the felony vandalism.

Here, the trial court had a rational reason to award the higher of the two estimates, and the higher estimate supported the trial court's finding that that amount represented full compensation to Adisa. (See *In re Alexander A.* (2011) 192 Cal.App.4th 847, 851–852 [garage estimate for repairs of vandalized vehicle].)[3]

Defendant's reliance on *People v. Stanley* (2012) 54 Cal.4th 734, is misplaced. In that case, the victim purchased her truck for $950, but the estimated cost to repair the vandalism damage inflicted by the defendant was $2,812.94. The trial court ordered restitution in the amount of the estimated repair costs. (*Id.* at p. 736.) The defendant did challenge the reasonableness of the repair estimate (made by a body shop), but rather, asserted restitution was limited to the price the victim had paid for the vehicle plus what he called a "surcharge" to reflect the inconvenience to the victim in having to replace the truck. (*Id.* at p. 739.) The Supreme Court disagreed, explaining "the trial court had discretion to award the victim as restitution the 'actual cost of repairing' her vandalized truck, so long as repair was 'possible.' " (*Ibid.*) The court also noted in passing that the trial court had observed that if the repair ended up costing less than the estimate, " 'then

---

[3] Contrary to defendant's assertion, the fact *In re Alexander A.* is a juvenile case is immaterial. The fundamental requirement of restitution is the same as in the adult criminal context—restitution must be reasonably calculated to make the victim whole.

7

restitution will be reduced appropriately.' " (*Id.* at p. 738.) *Stanley* by no means suggests, as defendant argues, that a restitution order cannot be based on a legitimate repair estimate. Nor is the case any kind of blessing on a problematic repair, rather than one that will insure the vehicle is actually repaired.

## DISPOSITION

The judgment of conviction and the restitution order are affirmed.


_____
Banke, J.


We concur:


_____
Margulies, Acting P. J.


_____
Dondero, J.