Filed 11/14/14  P. v. Roemer CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B254820 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA094176) |
| v. | |
| COLLIN ROEMER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tomson T. Ong, Judge.  Affirmed.

Jolene Larimore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, and James William Bilderback II, Supervising Deputy Attorney General, Brendan Sullivan, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant and appellant Collin Roemer entered into a case settlement with the prosecution which resulted in a commitment to county jail for five years eight months following his no contest to plea to two counts of second degree burglary (Pen. Code, § 459),[1] along with an admission as to one count that he damaged or destroyed property with a value exceeding $50,000 (§ 12022.6, subd. (a)(2)) and that he served a prior prison term (§ 667.5, subd. (b)). Defendant agreed to pay restitution as determined at a later hearing as a condition of the settlement. Following a formal restitution hearing, the trial court ordered restitution to the two victims in the amounts of $1,823,541 and $370,980.

Defendant raises one issue on appeal. He contends the trial court abused its discretion in awarding restitution to the victims for 16 months of lost rent on the burglarized properties. We affirm.

## FACTS[2]

### *The Offense*

A Long Beach police officer responding to a call on November 13, 2012, found the door to the commercial property at 4343 Atlantic (4343) broken open, providing free access inside. The property shares a wall with 4363 Atlantic (4363). The dry wall inside 4343 was ripped open, and all the wiring including electrical sockets and outlets, as well as some plumbing, had been torn out. Defendant was taken into custody by the officer, who saw defendant crawling out of a hole in the electrical room from 4363 to 4343.

---

[1] All statutory references are to the Penal Code, unless otherwise stated.

[2] The facts relating to commission of the burglary are taken from the preliminary hearing.

Defendant was advised of his *Miranda* [3] rights, which he waived, and admitted to "taking the wire."

The officer observed major damage to 4363—dry wall was torn out of the walls, and conduit and plumbing were missing. Four vehicles were in the garage below—a Mitsubishi Montero belonging to defendant, as well as a Ferrari, a Mercedes and a Toyota Land Cruiser. The Ferrari was totally stripped, and parts from the Ferrari were in defendant's Montero. The tires and batteries of the Mercedes and Land Cruiser were missing.

Defendant was interviewed by a detective the day after his arrest. After waiving his *Miranda* rights, defendant admitted driving by the building two days before his arrest to check the location, and then returning the day before his arrest to take copper wire, which he sold at a recycling center. Other individuals also took wire from the location. Defendant admitted stripping the Ferrari and removing the tires from the other cars.

### Dr. John Young—owner of 4363

**Preliminary hearing testimony**

Dr. Young, the owner of 4363, described the "horrifying" extent of destruction of his property. The walls and ceilings had "been ripped up," wires were "pulled out everywhere," and expensive medical and photography equipment was damaged, as were his Ferrari, Mercedes, and Land Cruiser. Heating and air conditioning units on the top level of the building were "completely destroyed." All of the property had been in working condition prior to the burglary.

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

**Restitution hearing testimony**

Dr. Young, an immigrant, had his dreams destroyed by the damage from the burglary. He has been a doctor in Long Beach for 30 years, and was "trying to build this building for my children," including a daughter in medical school and two children "in pre-med." After 16 months he does not have the money to make the repairs. His insurance company denied his claim and sent a retired police officer to investigate him. He sought $10,000 per month for lost rent. The building was going to be rented to a hospital, but the rental was put on hold because of an investigation regarding the hospital and a politician. The previous tenant paid $10,000 per month in rent.

*Paul David Foreman—owner of 4343*

**Preliminary hearing testimony**

Foreman, the owner of 4343, saw his building on November 14, 2012. The building had no lighting because all the wiring had been pulled out. All the copper leading to the bathroom, a distance of 150 feet, had been removed. Everything was stripped to the fixtures in the bathroom. There were holes in the walls. Based on his experience in commercial real estate, the electrical damage was at least $75,000, but could be as high as $200,000 if the building's transformer needed to be replaced. The remaining damage was at least another $100,000. He also lost rent, as he had an elder care facility lined up as a tenant for $13,000 per month.

**Restitution hearing testimony**

Foreman had a long term care facility that was ready to occupy the building at the time of the burglary. He was waiting for the prospective tenant's improvement requirements, "which we were starting to do," when defendant "caused this huge loss to

4

us." He has not been able to repair the building because of the expense, and he will "have to borrow the money to do it." He expects it to take close to a year to repair, caused in part by the need for permits from multiple agencies. The loss of rents is substantial and he was "ready to enjoy that rent," but was unable to do so due to defendant. The rents are what he depends on for income. He submitted a lease he had with a previous tenant to verify the rental value, which was $12,500 at the end of the lease. He sought lost rents based on the time from the burglary to the restitution hearing, describing that as "my best estimate of what I have lost to date."

**Ruling of the trial court on restitution**

The court fixed restitution in favor of Dr. Young at $1,823,541. Foreman was awarded restitution of $370,980. The restitution amounts include damage to property and 16 months of lost rent to each victim. Only the amount of lost rent awarded is in issue on appeal.

## DISCUSSION

Defendant argues the trial court abused its discretion in ordering restitution to the victims for 16 months of lost rental income. Defendant relies on *People v. Thygesen* (1999) 69 Cal.App.4th 988 (*Thygesen*) to support his contention that the trial court should have determined the reasonable period of time to repair the premises, rather than awarding the 16 months of rental value sought by the victims for the period between the time of the burglaries in November 2012, and the restitution hearing in March 2014.

*Standard of Review*

"Restitution orders are reviewed for abuse of discretion. (*People v. Mearns* [(2002)] 97 Cal.App.4th [493,] 498.) When there is a factual and rational basis for the

5

amount of restitution ordered, no abuse of discretion will be found. (*Id.* at p. 499.)" (*People v. Phu* (2009) 179 Cal.App.4th 280, 284.)

*Principle Applicable to Restitution*

"In 1982, California voters enacted Proposition 8, an initiative measure also known as the 'Victims' Bill of Rights,' which added to the California Constitution a provision that 'all persons who suffer losses' resulting from a crime are entitled to 'restitution from the persons convicted of the crimes causing the losses.' (Cal. Const., art. 1, § 28, subd. (b)(13)(A).) The Legislature was directed to enact implementing legislation. (*Id.,* art. 1, § 28, subd. (a)(8); see *People v. Giordano* (2007) 42 Cal.4th 644, 655.) The Legislature did so. In 1983, it enacted section 1202.4, which is at issue here. (Stats. 1983, ch. 1092, § 320.1, p. 4058.)" (*People v. Stanley* (2012) 54 Cal.4th 734, 736 (*Stanley*).)

Under the pertinent language of section 1202.4, subdivision (f), "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court . . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so and states them on the record." Section 1202.4 and other restitution states are liberally construed to effectuate the constitutional and legislative mandates. (*Stanley*, *supra*, 54 Cal.4th at p. 737.)

Lost rental value may be an element of an award of restitution section 1202.4, subdivision (f). (*Thygesen*, *supra*, 69 Cal.App.4th at p. 995.) In determining rental value, the court should receive evidence regarding the reasonable period of time the victim was deprived of the use of the damaged or stolen property. (*Ibid.*)

6

*Analysis*

The trial court did not abuse its discretion in determining that Dr. Young and Foreman were entitled to the rental value of their respective properties for a period of 16 months. Both victims testified in detail to the devastating damages caused by defendant. The victims detailed why, even at the time of the restitution hearing, they were unable to return their properties to the rental market due to the destruction of the premises. Neither victim had the financial resources to repair the extensive damage to his property. This situation was singularly attributable to defendant. Although a court has discretion to award an amount less than that claimed by a victim as lost rent if it determines the victims unreasonably delayed the repairs, there is no evidence to support such a finding in this case. To the contrary, the court lamented in its ruling how defendant's crimes against property had a devastating impact upon the victims in this case.

Defendant's reliance on *Thygesen*, *supra*, 69 Cal.App.4th 988, is misplaced. In *Thygesen*, the defendant rented a cement mixer, which he did not return. The defendant eventually pled guilty to theft of the mixer, and the trial court gave the victim the choice of accepting either the lost rental value of $3,822 or the replacement cost of the mixer of $2,098.98. The victim chose the larger sum. (*Id.* at p. 991.) The Court of Appeal reversed because the record contained no evidence "as to how often the mixer was used" or "why the mixer had not been replaced in over 13 months." As a result, "the trial court made an award based on the speculative proposition that the mixer would have been rented out every week for 13 months." (*Id.* at p. 995.)

Unlike the situation in *Thygesen*, the trial court here did not base its determination on speculation. The victims testified to the specific extent of the damage and explained exactly why they had been unable to repair and rent the properties during the 16 months between the burglaries and restitution hearing. The decision of the trial court was entirely consistent with the constitutional and statutory mandates that crime victims be fully compensated. The fault for the large award of restitution here lies with defendant, not the conduct of Dr. Young and Foreman.

7

**DISPOSITION**

The restitution order is affirmed.


KRIEGLER, J.

We concur:


MOSK, Acting P. J.


GOODMAN, J. [*]

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8