Filed 9/21/16  P. v. Wong CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>HOWARD FU WONG,<br><br>Defendant and Appellant. | A145225<br><br>(Alameda County<br>Super. Ct. No. H54369A) |

After defendant Howard Fu Wong pleaded no contest to cultivating marijuana, he was placed on five years of probation pursuant to the terms of a negotiated disposition. As part of the plea deal, he also agreed to pay restitution to Pacific Gas & Electric Company (PG&E) for stolen electricity used in the grow operation.  Following a contested restitution hearing, the trial court ordered him to pay $393,939.93.  As he did in the trial, he contends on appeal that PG&E is limited to its wholesale cost for the stolen electricity and, absent lost profits evidence, cannot recoup the amount it would have received had the power flowed through its meter and been billed and paid for.  We find this argument meritless, if not specious, and affirm the restitution award.

### BACKGROUND

We summarize only the facts and procedural background relevant to the one issue on appeal.  Defendant was determined to have "exclusive control" of three warehouses used for a marijuana growing operation.  At each, PG&E's metering equipment was bypassed, enabling defendant to use large amounts of electricity for the cultivation operation without paying for it.

1

After police discovered the operation and seized 5,414 marijuana plants, the district attorney charged defendant with cultivating marijuana (Health & Saf. Code, § 11358) and possession of marijuana for sale (Health & Saf. Code, § 11359). Pursuant to a negotiated disposition, defendant pleaded no contest to the cultivation count, and the remaining count was dismissed on the district attorney's motion. In accordance with the plea deal, the trial court suspended imposition of the sentence and placed defendant on five years of probation. As part of the plea agreement, defendant agreed to pay PG&E restitution in an amount to be determined at a later hearing.

PG&E sought $393,939.93 for the value of the electricity defendant had stolen from it.[1] At the restitution hearing, a PG&E investigator testified the amount was calculated by estimating the number of kilowatt hours used at the three warehouses, then multiplying that number by the scheduled rate that would have been charged for the power. Defendant did not present any evidence, but maintained PG&E had not presented sufficient evidence to justify the amount sought. The trial court disagreed and awarded PG&E $393,939.93 in restitution.

## DISCUSSION

Defendant contends that under Penal Code section 1202.4,[2] the victim restitution statute, PG&E could not recover the retail rate of electricity unless it presented evidence of lost profits—for example, evidence showing the energy demands of defendant's unlawful grow operation prevented PG&E from providing power to another customer. Without such evidence, defendant maintains "the trial court should have ordered restitution calculated at the wholesale rate, or the value of the energy itself to PG&E, absent profits."

---

[1] PG&E also sought approximately $4,000 for investigation-related costs. However, the district attorney did not seek these costs as part of the restitution award.

[2] All further statutory references are to the Penal Code.

2

To begin with, the restitution awarded in this case is authorized by section 1203.1 (not § 1202.4) because it was ordered as a condition of probation.[3] (§ 1203.1, subd. (a)(3) [in granting probation, trial courts "shall provide for restitution in proper cases"].)  Under section 1203.1, courts have a "much freer hand to impose restitution as a condition of probation" than they do under section 1202.4.  (*People v. Walker* (2014) 231 Cal.App.4th 1270, 1274.)  "As long as the restitution imposed is ' "reasonably related to the crime of which the defendant was convicted or to future criminality," ' it may be imposed as a condition of probation—"even when the loss was not necessarily caused by the criminal conduct underlying the conviction." [Citations.]  This greater latitude to impose restitution arises from the purpose of probation to foster rehabilitation [citation] as well as from the defendant's consensual decision to forgo imprisonment in favor of probation and its potentially more onerous conditions [citation]." (*Ibid.*)  "There is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action." (*People v. Anderson* (2010) 50 Cal.4th 19, 27.)  A trial court may use any rational method of fixing the amount of restitution which is reasonably calculated to make the victim whole.  (*People v. Goulart* (1990) 224 Cal.App.3d 71, 83.)

Under these principles, the trial court plainly did not abuse its discretion by ordering defendant, as a condition of his probation, to pay restitution to PG&E based on the retail rate for its electricity.  The award is directly related to defendant's crime of cultivating marijuana since he stole the power for the grow operation.  He is also being held accountable for the entire loss PG&E sustained, i.e., he is paying the amount he would have paid as a legitimate customer—an entirely appropriate responsibility for a probationer.

---

[3] That the trial court failed to indicate the statutory basis for its restitution order is immaterial since "[w]e do not review the trial court's reasoning, but rather its ruling." (*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15.)

Even if restitution in this case were governed by section 1202.4, we would reach the same conclusion. Section 1202.4 requires a defendant to make restitution "in every case in which a victim has suffered economic loss as a result of the defendant's conduct." (§ 1202.4, subd. (f); see *People v. Phu* (2009) 179 Cal.App.4th 280, 282 (*Phu*) [affirming restitution order to electrical utility in marijuana plea case under § 1202.4, subd. (f)].) There is no question PG&E suffered an economic loss directly as a result of defendant's cultivation crime, given that the stolen power was an essential part of the operation.

In the trial court, the prosecution cited *Phu* in support of the requested restitution amount. Defendant vigorously argued, as he does on appeal, that *Phu* involved a different situation and thus is immaterial. The trial court recognized the facts of *Phu* differed, but concluded the case provided a formula to determine the amount of restitution.

In *Phu*, the defendant pleaded guilty to conspiracy to sell marijuana. (*Phu, supra*, 179 Cal.App.4th at p. 282.) He was the utility subscriber for a house involved in a grow operation, wherein the police found 504 plants, a large collection of growing apparatus and equipment, and an illegal diversion of electrical power. (*Ibid.*) The utility calculated its loss based on the expected electrical consumption of the grow operation (based on its size and the nature of the equipment used), from the time the defendant started the utility service until the police conducted the search. (*Id.* at p. 283.) The utility candidly acknowledged it did not know the precise date when the defendant started stealing its power, explaining it had made a reasonable assumption. (*Ibid.*) " '[T]he assumption is that we're going to bill from the service start date because, as far as we're concerned, he entered into a contract with us, and he had a chance to have that service metered accurately, and he chose not to.' " (*Ibid.*) The trial court awarded the utility company $24,752.35, approximately $50 more in restitution than the it had requested, and the Court of Appeal affirmed $24,704.91, deducting the additional approximately $50. (*Id.* at pp. 283, 286.)

It is true the principal issue in *Phu* was the utility's assumption as to the start of the period of theft and calculating its loss from the date the defendant signed up for

4

electrical service.  It is also true, however, as the trial court here observed, that the utility in *Phu* calculated its loss by replicating what it would have *billed* the defendant for the power he stole.  While defendant maintains that means nothing since no issue was raised in *Phu* about using the billing rate, we think this could well be because using the billing rate was an entirely rational way to measure the utility's loss.  Indeed, defendant did not cite in the trial court, nor has he cited on appeal, a single case supporting his assertion that a utility may only recover its wholesale cost for stolen power or water and cannot recover the profit it would have made had the service or product been properly metered, billed and paid for.  Contrary to defendant's assertion, PG&E is not recovering a "windfall" by recouping what it would have been paid for the electricity defendant and his cohorts used, had they not stolen it by circumventing the meter.

While defendant insists *People v. Chappelone* (2010) 183 Cal.App.4th 1159, is on point, that is not remotely the case.  In *Chappelone*, the defendants stole merchandise from a Target department store.  (*Id.* at p. 1166.)  The trial court awarded restitution to Target at the retail rate of the merchandise even though "the bulk of the goods were unsellable because they were either damaged merchandise or clearance items withdrawn from the sales floor."  (*Id.* at p. 1173.)  The appellate court reversed, stating that "Target was entitled only to restitution equal to the value of the stolen property, and by all accounts at the hearing, the value was substantially less than the last retail price for most goods.  By failing to account for the fact that a majority of the stolen merchandise was *already damaged at the time of the theft*—and thus destined for donation—the trial court awarded Target restitution for property that was of greater quality than that which defendants stole."  (*Id.* at pp. 1176–1177, italics added.)  Here, there was not a shred of evidence PG&E's electricity was "already damaged" and thus not worth its market price when it was stolen.  On the contrary, it appears the electricity was fully charged and produced a verdant crop of cannabis.

In sum, the trial court did not abuse its discretion in awarding $393,939.93 in restitution to PG&E.

5

**DISPOSITION**

The judgment is affirmed.

_____
Banke, J.

We concur:


_____
Humes, P. J.


_____
Margulies, J.

A145225, *People v. Wong*

7