Filed 1/21/21  P. v. Walter CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C091537 |
| Plaintiff and Respondent, | (Super. Ct. No. 19F0004267) |
| v. | |
| COREY RYAN WALTER, | |
| Defendant and Appellant. | |

After defendant Corey Ryan Walter pleaded no contest to two counts of burglary, the trial court awarded victim restitution to the local high school that defendant burglarized, including reimbursement for the school's "loss" of 18 hours of work time that the principal spent on tasks outside his normal duties as a result of defendant's misconduct.  On appeal, defendant argues the trial court abused its discretion in making this award.  We affirm.

1

BACKGROUND

The underlying facts of defendant's crime of conviction are largely irrelevant to the issues raised on appeal. Simply put, in December 2018, defendant pleaded no contest to two counts of burglary (Pen. Code, § 459).[1] At the same hearing, the trial court sentenced defendant to serve two years in state prison (to be served in county jail) on one burglary count, and a concurrent two-year term on the other. The trial court imposed various costs not at issue in this appeal, and reserved jurisdiction to award victim restitution to the local high school that defendant burglarized (§ 1202.4).

At a January 2020 restitution hearing, the school principal testified that after the "sheriff's department . . . told [the school] to collect [their] information," he spent six hours on three separate days (a) reviewing surveillance footage from multiple cameras on campus trying to determine the identity of the burglar and (b) "clipping video content" and "burning DVDs" to document the extent of damage caused.

Ultimately, the trial court awarded $2,255 to the high school pursuant to section 1202.4. Of that amount, $1,404 was for the "loss" to the school due to the principal's "attention away from his normal duties," at a rate of $78 per hour for 18 hours.

Defendant filed a timely notice of appeal.

DISCUSSION

Defendant argues the trial court abused its discretion[2] when it ruled the principal's time spent reviewing video footage and creating DVD's for law enforcement was

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     Where a victim has suffered economic losses as a result of a defendant's actions, a trial court must require the defendant to make restitution. (§ 1202.4, subd. (f); *People v. Phu* (2009) 179 Cal.App.4th 280, 283.) We give the right to restitution a broad and liberal construction. (*Ibid.*) The trial court may consider almost any kind of information in calculating restitution, and we review the court's resulting order for an abuse of

compensable victim restitution under section 1202.4. He contends *People v. Ozkan* (2004) 124 Cal.App.4th 1072 (*Ozkan*) stands for the proposition that "restitution for investigative costs by a public agency such as" the high school "may not be awarded pursuant to . . . section 1202.4."

The People argue the principal's time was compensable because the school was a victim, the principal was performing work outside his normal duties, and his "investigation into [defendant's] criminal activities was necessary to uncover the nature and extent of the loss and damage to the school and to allow the school to recoup the full amount of loss."

We agree with the People and conclude the trial court did not abuse its discretion.

"The general restitution statute, . . . section 1202.4, subdivision (a)(1), provides that 'a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime.' The definition of a 'victim' in . . . [s]ection 1202.4, subdivision (k)(2), includes a governmental agency 'when that entity is a direct victim of a crime.' " (*Ozkan, supra*, 124 Cal.App.4th at p. 1076, italics omitted.) Restitution shall be fixed in a dollar amount to fully reimburse the victim for losses "for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to" specified kinds of losses. (§ 1202.4, subd. (f)(3).)

In *Ozkan*, the defendant engaged in a scheme to sell regular grade gasoline as higher priced mid-grade and premium gasoline. The trial court found the direct victims of this fraud included the State Board of Equalization (SBE), to which taxes were due. The defendant was convicted of grand theft by fraud and filing false and fraudulent sales and use tax returns, and ordered to pay restitution to the SBE for unpaid taxes, penalties

---

discretion. (*Id.* at pp. 283-284.) An order based on an error of law would constitute an abuse of discretion. (*People v. Jennings* (2005) 128 Cal.App.4th 42, 49.)

and interest. But the court declined to order the defendant to pay for the agency's *investigative* costs, consisting of time spent by an internal auditor analyzing invoices and sales tax returns to determine the total misappropriations. (*Ozkan, supra*, 124 Cal.App.4th at pp. 1073-1075.) The Court of Appeal upheld that ruling, explaining that "public agencies are not directly 'victimized' for purposes of restitution under . . . section 1202.4 merely because they spend money to *investigate crimes or apprehend criminals*." (*Id.* at p. 1077, italics added; see also *People v. Torres* (1997) 59 Cal.App.4th 1, 3-4 [restitution inappropriate for a law enforcement agency's expenditures on a controlled buy of contraband, as this is an ordinary "cost of its doing its job"].)

The trial court did not commit an error of law in following this distinction between the ordinary costs of an agency performing its function and extraordinary expenses not within the agency's function. A key point overlooked by defendant in this case is that the high school itself was a victim and the trial court found it suffered a direct loss when the principal spent 18 paid hours "away from his normal duties" *as a result of* defendant's conduct. Unlike the work performed by the SBE's auditor in *Ozkan*, the principal's investigation of the burglaries was not part of his normal job duties. The award of $1,404 is for the principal's normal-duty hours that the school paid for but did not receive; not for the principal's investigation, per se. As such, it is compensable under the general restitution statute and specifically under section 1202.4, subdivision (f)(3)(D) and (E), which mandate restitution for "[w]ages . . . lost due to injury incurred by the victim" and "[w]ages . . . lost by the victim . . . due to time spent as a witness or in assisting the police or prosecution." (See also *In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1134 ["a restitution award may also properly include the reasonable value of employee work product lost as a result of the criminal conduct of another"].)

Defendant's suggestion that the principal's time is not compensable under section 1202.4 because he essentially was a volunteer and "assumed unnecessarily" "a function of the Sheriff's Department" when he viewed video footage "to see if there were

4

burglaries," "to determine the damages," or "to identify the burglar or burglars," is unpersuasive because it would undermine the broad remedial purpose of the statute and read a necessity requirement into the law not found in the text. Further, it runs contrary to the plain text of section 1202.4, subdivision (f)(3)(D) and (E), as noted above.

## DISPOSITION

The judgment is affirmed.


        KRAUSE        , J.


We concur:


     RAYE       , P. J.


     RENNER     , J.