Filed 8/10/21  P. v. Cam CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C091632 |
| Plaintiff and Respondent, | (Super. Ct. No. STKCRFE20140005358) |
| v. | |
| LUC CAM, | |
| Defendant and Appellant. | |

Defendant Luc Cam pleaded no contest to theft of utility services over $400 and was placed on five years of informal probation.  Following a contested restitution hearing, defendant was ordered to make restitution to Pacific Gas & Electric (PG&E) in the amount of $219,035.32.  On appeal, defendant contends the court abused its discretion in setting the restitution amount.  We will affirm the restitution order.

After defendant appealed, Assembly Bill No. 1950 (2019-2020 Reg. Sess.) became effective, which modified the permissible period for grants of probation.

1

Considering Assembly Bill No. 1950, we shall remand for defendant to seek a reduced term of probation.

BACKGROUND

Defendant stole electricity to grow cannabis plants. On June 26, 2019, defendant pleaded no contest to felony theft of utility services over $400. (Pen. Code, § 498, subd. (d).)[1] The court noted at the change of plea hearing, defendant's sentence "would be informal probation, five years." On November 12, 2019, the court suspended imposition of sentence and granted defendant five years of informal probation.

On March 2, 2020, the trial court held a hearing on victim restitution. Brian Graddy, a theft investigator for PG&E, testified that once in December 2013 and once in March 2014 he measured the actual electricity being used at defendant's house and compared it to what the meter read. At these times the house was consuming 35.316 and 28.068 kilowatts per hour, respectively, but the meter read only 3.14 and .983 kilowatts per hour, respectively.

On March 7, 2014, Graddy accompanied police on a search of defendant's residence and discovered an electrical circuit that bypassed PG&E's metering system. Connected to the bypassed circuit were fifty-five 1,000-watt high-pressure sodium lights, all connected to timers set to run between 12 and 18 hours a day, along with 21 inline exhaust fans, and one oscillating fan. Graddy inputted the average electricity used by the equipment and their associated timer valuers in a spreadsheet used to calculate the total electricity used. From this, he calculated the equipment was set up to steal 952.379-kilowatt-hours per day, or about 40 kilowatts per hour. At an average price of 34.6 cents a kilowatt, he estimated defendant stole $330.14 per day.

---

[1] Undesignated statutory references are to the Penal Code.

2

Graddy also estimated defendant began stealing electricity on May 17, 2012. He determined this date based on the age of the equipment and usage patterns indicating abnormal electricity usage on metered outlets in the house. This meant defendant had been stealing electricity for 659 days for a total amount of $217,562.16. Graddy also estimated it cost PG&E $1,473.16 total to investigate the theft, for the meter itself, and to terminate service.

The court found Graddy credible and ordered defendant to pay PG&E $219,035.32 in restitution damages.

Defendant timely appealed.

DISCUSSION

I

*Restitution Amount*

Defendant contends the trial court abused its discretion in setting the restitution amount because it was unsupported by the evidence. Defendant relies on the difference between Graddy's estimated electricity stolen each day and the actual amount he measured on those two days and that Graddy could not be certain the equipment was on during the entire 659 days. Defendant contends there could have been "perhaps days or weeks" when the equipment was idle, and this "could reasonably support a reduction in the billed hours by ten to 12 percent."

Where "a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim . . . based on the amount of loss claimed by the victim . . . . The court shall order full restitution." (§ 1202.4, subd. (f).) " 'While it is not required to make an order in keeping with the exact amount of loss, the trial court must use a rational method that could reasonably be said to make the victim whole, and it may not make an order which is arbitrary or capricious.' " (*People v. Phu* (2009) 179 Cal.App.4th 280, 283 (*Phu*).)

3

We review a challenge to the amount of victim restitution for abuse of discretion. (*People v. Baker* (2005) 126 Cal.App.4th 463, 468-469.)  " ' "A victim's restitution right is to be broadly and liberally construed." ' " (*People v. Moore* (2009) 177 Cal.App.4th 1229, 1231.)

The restitution amount set here was based on a rational method.  Graddy testified that he relied on the average electricity used by the equipment connected to the bypassed circuit and the amount of time the equipment was scheduled to be on each day as stated on the timers.  Graddy then used the cost of the electricity at the time of the theft over the period Graddy believed defendant was stealing electricity, based on reasonable assumptions on usage patterns and the equipment's manufactured dates.

This court endorsed a nearly identical approach in *Phu*.  There, the defendant had also stolen electricity for a cannabis growing operation and the power company's representative estimated the value of the stolen electricity "based on the timer settings and the wattage of the equipment." (*Phu, supra*, 179 Cal.App.4th at p. 283.)  The investigator also used the date service began with the defendant because that was the best information he had. (*Ibid.*)  We affirmed the restitution amount granted on this methodology because any other date would be necessarily speculative based on the limited information on the defendant's operations, and "[s]electing the earlier date was the best guarantee that the victim would receive full compensation." (*Id*. at p. 284.)  We also approved of the equipment calculations, even though it was more than the electricity measured one day, because, in part, the investigator testified "inventorying the equipment hooked up to power is the most accurate method for assessing power usage." (*Id*. at p. 285.)

Here, as in *Phu*, there was some guesswork required to determine just how much electricity was stolen.  Graddy conceded he was not certain the equipment was being used during the entire period and that his calculations assume the timers were set for the same amount of time during the entire two-year period.  But defendant's position also

4

requires guesswork as he asserts the lights "could" have been off for some of that time without providing any evidence they were. Defendant did not inform PG&E of his intent to steal electricity, so they had to make retroactive assumptions to determine the extent of his theft. The assumptions Graddy made here were reasonable and the " 'lack of personal knowledge [regarding the period of time and amount of the theft of power] was not due to any fault by [PG&E]; rather, it was defendant's misappropriation . . . that led to [PG&E's] inability to conclusively determine' the precise extent of the theft." (*Phu, supra*, 179 Cal.App.4th at p. 284.) Thus, the trial court's restitution order based on Graddy's calculations was not arbitrary or capricious.

II

*Assembly Bill No. 1950*

While this appeal was pending, Assembly Bill No. 1950 (Stats. 2020, ch. 328) went into effect. That bill changed the permissible length of probation under section 1203.1 for felony cases to a maximum of two years and under section 1203a for misdemeanor cases to a maximum of one year. The two-year limit for felony cases does not apply to certain offenses not applicable here. (§ 1203.1, subd. (m).)

Because the new law mitigates punishment and there is no savings clause, it operates retroactively. (See *In re Estrada* (1965) 63 Cal.2d 740, 748; *People v. Sims* (2021) 59 Cal.App.5th 943, 955-964 (*Sims*) [finding Assem. Bill No. 1950 is "an ameliorative change . . . that is subject to the *Estrada* presumption of retroactivity. The Legislature did not include a savings clause or other clear indication that the two-year limitation applies on a prospective-only basis"]; *People v. Quinn* (2021) 59 Cal.App.5th 874, 879-885 [same].) Assembly Bill No. 1950 therefore applies to defendant because his case is not yet final and his probation term exceeds the now maximum two-year term permissible under section 1203.1

The record on appeal reflects that defendant was convicted by a no contest plea. However, the appellate record does not contain copies of the original plea agreement;

5

thus, it is not clear exactly what negotiations took place below. The court's statements at the change of plea hearing also do not confirm whether a stipulated sentence was a material term of the agreement. As such, we will follow the remedy employed by the court in *Sims*, and remand the matter for resentencing to allow defendant to seek a reduced probation term under Assembly Bill No. 1950 and allow the court to review the status of his probation. (*Sims, supra*, 59 Cal.App.5th at p. 964 [the "defendant is entitled to seek a reduced probation term on remand under Assembly Bill No. 1950"].) However, we express no opinion on whether the People should be allowed to withdraw from the plea, or the trial court be allowed to rescind its approval of the agreement.

DISPOSITION

We remand the matter for resentencing to allow defendant to seek a reduced probation term under Assembly Bill No. 1950. In all other respects, the judgment is affirmed.

                                    /s/
                                    BLEASE, J.

We concur:

     /s/
RAYE, P. J.

     /s/
HULL, J.

6